FERGUSON, APPELLEE, *v.* JOHNSON, APPELLANT; BANCOHIO NATIONAL BANK, APPELLEE.

(No. CA83-01-008—Decided March 29, 1984.)

144

Mr. *Carl A. Meyers,* for plaintiff-appellee Robert L. Ferguson.

Mr. *Gary V. Bowman,* for defendant-appellee BancOhio National Bank.

Mr. *Gary D. Ostendarp,* for appellant Victor E. Johnson.

JONES, J. On October 17, 1980, plaintiff-appellee, Robert L. Ferguson, filed suit against defendant-appellant, Victor E. Johnson. The complaint contained an action for money and also sought foreclosure of a mechanic's lien held by Ferguson against Johnson's property. Ferguson claimed that Johnson owed over $50,000 on a construction contract between the parties. In addition to Johnson, defendant-appellee, BancOhio National Bank ("BancOhio"), the holder of a mortgage lien on Johnson's property, and other parties holding various liens on the property, were named as defendants in the complaint.

BancOhio filed an answer to Ferguson's complaint and at the same time filed a cross-claim against Johnson, seeking damages of $50,000 for Johnson's alleged default on a construction loan note and the foreclosure of a mortgage given by Johnson to secure payment of the note.

Johnson filed his answer to Ferguson's complaint. In addition, Johnson filed a counterclaim against Ferguson, alleging damages in the amount of approximately $18,900 resulting from Ferguson's breach of the construction contract.

On February 2, 1982, fourteen months after BancOhio had filed its cross-claim against Johnson, Johnson filed a "cross-claim" against BancOhio. Johnson sought both compensatory and punitive damages, claiming that BancOhio negligently distributed the construction loan funds. The cross-claim contained the following declaration:

"Defendant Victor Johnson requests Trial by Jury." This was the only request for a jury trial by any of the parties. All parties were gradually dismissed from the case until the only matters to be resolved were between Ferguson, Johnson and BancOhio.

Johnson's request for a jury trial was denied and a bench trial commenced on June 7, 1982, continuing for six days. In its findings of fact and conclusions of law the trial court determined, *inter alia,* that Ferguson and Johnson had agreed to a contract price of $45,000 for the construction contract; that Ferguson had been paid $16,200.44 for the work he had performed; and that Ferguson was entitled to the difference between the contract price and the amount he had been previously paid.

Based on this, the trial court awarded Ferguson judgment in the amount of $28,799.66. In addition, both Johnson's counterclaim against Ferguson and his cross-claim against BancOhio were dismissed. The court also denied Ferguson's claim for money he spent on "extra" construction above the $45,000 contract limit.

Johnson filed his notice of appeal and presents the following assignments of error:

"First Assignment of Error:

"The trial court erred in denying the defendant-appellant's request for a jury trial.

"Second Assignment of Error:

"The trial court erred in dismissing the counterclaim of the defendant-appellant Johnson against the plaintiff-appellee Ferguson."

Johnson's first assignment of error asserts that the trial court improperly denied his request for a jury trial. A jury trial was requested when Johnson filed his cross-claim against BancOhio. A careful review of the pleadings is necessary in order to properly address this assignment of error.

After Ferguson had filed his initial complaint, BancOhio filed its answer on November 20, 1980, accompanied by its cross-claim against Johnson to foreclose the mortgage and collect on the note executed by Johnson. On December 18, 1980, Johnson filed his answer to BancOhio's cross-claim, stating that if any conditions of the mortgage were broken, they were due to BancOhio's "negligent, willful and wanton interference" with Johnson's performance of the mortgage conditions. No demand for a jury trial was made at this time. Some ten months later on October 27, 1981, Johnson filed a motion for leave to file a *counterclaim* against BancOhio, citing in support of his motion Civ. R. 13 and R. 15. The motion was assigned for hearing but the disposition thereof was not journalized. In any event, Johnson filed his counterclaim, styled as a cross-claim, on February 2, 1982, at which time he made his request for a jury trial.

Civ. R. 38(B) provides in part that:

"Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and *not later than fourteen days after the service of the last pleading directed to such issue.*" (Emphasis added.)

The failure of a party to timely serve his demand for a jury trial as required by the Civil Rules constitutes a waiver by him of a trial by jury. *Frashuer* v. *Travelers Indemnity Co.* (1974), 49 Ohio App. 2d 1 [3 O.O.3d 78]; Civ. R. 38(D). Civ. R. 38 is patterned after Fed. R. Civ. P. 38. See Staff Note to Civ. R. 38. In construing Fed. R. Civ. P. 38(b), the Fifth Circuit Court of Appeals held that amended pleadings not introducing new issues will not give rise to a demand for a jury trial. *Guajardo* v. *Estelle* (C.A. 5, 1978), 580 F.2d 748. The term "new issues" has been interpreted to mean new issues of fact and not new theories of recovery. *Guajardo, supra.* See, also,

*Jackson* v. *Airways Parking Co.* (N.D.Ga. 1969), 297 F.Supp. 1366.

A party who is served with a pleading stating a cross-claim against him is required to serve an answer to the cross-claim within twenty-eight days after the service upon him. Civ. R. 12(A)(2). Johnson complied with this requirement when he filed his answer on December 18, 1980. Under the above-quoted provisions of Civ. R. 38(B), Johnson would have had fourteen days thereafter, or until January 1, 1981, to demand a trial by jury. No such demand was made during this time. In addition, if Johnson had a claim against BancOhio, it should have been filed along with the answer to the bank's claim, as it appears that Johnson's claim against BancOhio was a compulsory counterclaim since it arose from the subject matter of BancOhio's claim. Civ. R. 13(A).

Johnson later sought the court's permission to file a counterclaim as a supplemental pleading, in order to assert his claim against BancOhio. Whether Johnson's claim against BancOhio was a counterclaim as alleged in the motion, or a cross-claim, is of no consequence. In either case, the cross-claim against BancOhio failed to raise new issues of fact. The basis of Johnson's claim was that BancOhio negligently distributed the construction loan funds. Johnson asserted and initially raised this issue in his answer to BancOhio's cross-claim when he stated that any default of the mortgage conditions was the proximate result of the "negligent, willful and wanton interference" of BancOhio's employees. Thus, the cross-claim against BancOhio failed to raise any "new issues" and the right to demand a jury trial was not revived by Johnson's amended or supplemental pleading against BancOhio. Johnson's failure to timely demand a trial by jury resulted in his waiver of a jury trial and the trial court committed no error in overruling Johnson's request for a jury. For these

reasons, the first assignment of error is hereby overruled.

For his second assignment of error, Johnson argues that the trial court erred in dismissing his counterclaim against Ferguson. Johnson claims that Ferguson's failure to finish the construction of the building on time necessitated Johnson's expenditure of funds to complete the project. Johnson's position is that the trial court's refusal to grant damages against Ferguson for these additional costs was against the manifest weight of the evidence.

The record indicates that Johnson initially hired one Carroll Dunn as a contractor to build a Kentucky Fried Chicken Restaurant. After construction of the structure was started, Dunn apparently walked off the job. Johnson then approached Ferguson as a possible replacement for Dunn. After reviewing the plans and specifications for the structure and inspecting the partially constructed building, Ferguson determined the sum necessary to complete the construction, submitted a bid, and prepared a contract calling for Ferguson to finish the restaurant at a cost not to exceed $45,000. According to the terms of the contract, Ferguson was to be paid for his work in biweekly installments.

Practically every term and issue of the contract was disputed by the parties. Johnson claimed that Ferguson promised to finish the structure in six weeks. Ferguson's position was that he agreed to finish construction as soon as possible but did not promise a date certain for completion. In addition, the parties had conflicting views over specific items of construction. Ferguson believed that he would not be responsible for certain items, either because Johnson had assumed responsibility for them or because other contractors were working on them at the time Ferguson and Johnson entered into their contract and Ferguson expected these contractors to finish their respective projects.

Johnson's opinion on this matter was that Ferguson's contract to "finish the restaurant" meant that Ferguson was responsible to complete any and all construction associated with the restaurant.

Judgments which are supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]; *In re Estate of Seelig* (1981), 2 Ohio App. 3d 223.

The record indicates that Johnson stopped payment to Ferguson when the building was not completed after Ferguson had been working on it for six weeks. There is also evidence that Ferguson's work was, to a certain degree, delayed by defective and damaged work by other contractors for which Ferguson had not assumed responsibility. Johnson's failure to promptly correct those problems and his action in stopping payments to Ferguson resulted in the delay in completing the restaurant. Thus, there is evidence to support the trial court's finding that the sums expended by Johnson were "of his own doing and of no fault of the Plaintiff [Ferguson]."

Considering the fact that the case at bar took six days to complete, enough evidence was introduced to support either party's position in regards to Johnson's counterclaim. The credibility of the witnesses and the resolution of conflicts in evidence were matters for the court to decide since the court was the trier of fact. *Bilovocki* v. *Marimberga* (1979), 62 Ohio App. 2d 169 [16 O.O.3d 369]. Where there is a conflict in evidence which would permit reasonable minds to reach different conclusions upon issues of fact, the decision of the trial court must be affirmed. *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85 [2 O.O.3d 65]. From the trial court's decision it is apparent that the

court elected to believe Ferguson's version of the facts. The decision to deny Johnson's counterclaim was supported by competent, credible evidence and we see no reason to reverse that decision. Accordingly, the second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, J., dissenting. The majority has determined that the trial court properly denied the appellant's request to have his claims against BancOhio tried to a jury.

To reach such a conclusion, it was necessary to find that appellant's answer setting forth his defenses was the *last* pleading directed to the issues raised therein. From such premise, the majority reasons that by failing to request a jury not later than fourteen days after service of the answer, the appellant waived his right to a jury.

The record before this court discloses that appellant did file a cross-claim against BancOhio, that the cross-claim was triable of right to a jury and contained a proper request for a jury trial. The issues raised in the cross-claim were heard by the court and the cross-claim was dismissed only after the bench trial on BancOhio's Civ. R. 41 motion.

If the appellant's cross-claim was triable, I must conclude it was properly triable to a jury.

To shore up its position, the majority further opines that the cross-claim should have been filed with the appellant's answer, it being a compulsory counterclaim as set forth in Civ. R. 13(A). It is apparent from the record that leave to file the claim against BancOhio was granted, presumably pursuant to Civ. R. 13(F) as an omitted counterclaim. Thus, of necessity, the counterclaim filed was the last "pleading" directed to the issues raised as that term is defined in Civ. R. 7, and the jury demand should have been honored.

This result is mandated by the basic concept of fairness. The majority's opinion not only precludes appellant from having a jury trial, but would also preclude BancOhio, which was suddenly faced with a $50,000 claim for damages, from requesting a jury trial if it so desired.

Although, as a part of its strategy below, BancOhio did not request a jury herein, the *next* litigant faced with potential liability by virtue of the addition of an omitted counterclaim should have the option of defending such claim before a jury if he should so choose. The majority's decision would deny such option.

Without elaboration, I must additionally dissent from the majority's ruling on the appellant's second assignment of error. Since appellee Ferguson did not appeal or argue the dismissal of his claim for extras, the only matter for this court's consideration is the question raised by appellant as to the recovery of his damages due to Ferguson's failure to complete the contract.

It is patent in the record that there were substantial expenses incurred by appellant to finish the restaurant according to the plans and specifications, which Ferguson unilaterally decided were not his responsibilities. The record fails to establish that there was any express or implied assumption of these costs by appellant.

It appears that the trial court, after six days of hearings, decided to "wash" the claim of appellant for costs of completing the structure against the claim of Ferguson for "extras."

While the equities may have allowed such determination in lieu of granting nearly equivalent judgments, only the

*appellant's* claim was appealed and is before this court. I would reverse and remand on the issue of appellant's damages in the belief that the trial court's decision is against weight of the evidence.